# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

SWIFT BEEF COMPANY,               )
                                  )
          Plaintiff,         )
                                  )
vs.                               )   Case No. 18-0105-EFM-KGG
                                  )
ALEX LEE, INC.,                   )
                                  )
          Defendant.         )
                                  )

## MEMORANDUM & ORDER ON
## MOTION TO QUASH THIRD-PARTY SUBPOENA

Now before the Court is the "Motion to Quash Subpoenas" filed by non-party Vantage Foods NC LP ("Vantage"). (Doc. 1.) Also pending is the "Motion to Compel Compliance with Subpoena" filed by Plaintiff Swift Beef Company ("Swift"). (Doc. 8.) Having reviewed the submissions of the parties, the Court is prepared to rule.

## FACTS

This case results from a third-party subpoena served on Vantage in a contract dispute pending in the United States District Court for the Western District of North Carolina ("underlying lawsuit"). The underlying lawsuit results from "positive statements" by Defendant Alex Lee "that it will not substantially

1

perform its obligations under two agreements with Swift Beef – a Lease Agreement and a Purchase Agreement (collectively, 'Agreements') – that involve a meat further processing and packaging plant located in Lenoir, North Carolina ('Lenoir Plant')." (Doc. 9, at 1.) Alex Lee's counterclaims include two for breach of contract "contending that it may immediately terminate the Agreements because Swift Beef purportedly failed to 'use commercially reasonable efforts to produce' meat products 'efficiently and at competitive cost.'" (*Id.*, at 1-2.)

Vantage previously operated the Lenoir plant that is currently owned by Defendant and the subject of the underlying lawsuit. Vantage has no contractual or business relationships with either of the parties in the underlying lawsuit. Vantage also has no ongoing business operations, no revenue, no employees, and exists essentially as a defunct entity. Its only office is in Wichita, Kansas.

Swift served a subpoena on Vantage on May 29, 2018. Vantage contends that this initial subpoena was "procedurally defective and substantively flawed." (Doc. 2, at 2.) Swift served a second subpoena on June 12, 2018, "[i]n an effort to resolve Vantage Foods' objection to the first subpoena on the grounds that it was defective by requiring production in Raleigh, North Carolina instead of Wichita, Kansas . . . ." (Doc. 9, at 9.)

Vantage concedes that the "procedural defects were corrected by Swift's issuance of [the] modified subpoena . . . ." (Doc. 2, at 2.) Even so, Vantage argues

that both subpoenas "should be quashed in their entirety and Vantage Foods should not be required to produce any of the items Swift requests." (Doc. 2, at 2.) Based on the arguments contained in Swifts response to Vantage's motion to quash as well as Swift's own motion to compel, the Court finds any issues regarding the initial subpoena are now moot and will focus only on the modified subpoena of June 12, 2018.

According to Vantage, the subpoena consists of "twenty-five sweeping requests for documents covering almost every conceivable aspect of Vantage Food's obsolete business relationship with Alex Lee and Alex Lee's subsidiaries." (*Id*., at 3.) Vantage has summarized the categories of requested documents as follows:

- All agreements and contracts between Vantage Foods and Alex Lee and its related entities, Merchants Distributors and Lowes Foods;
- Internal and external communications regarding Vantage Foods ceasing operations of the Lenoir Plant;
- Documents and communications around termination of contracts and agreements between Vantage Foods and Alex Lee;
- Documents showing volume of production by Vantage Foods while it operated the Lenoir Plant;
- All documents related to complaints by Alex Lee and its related entities to Vantage Foods during their relationship;
- Communications between Vantage Foods and Alex Lee concerning the Initial Subpoena;
- Vantage Foods' labor costs associated with its operation of Alex Lee's Lenoir Plant;

3

- Drawings and photos of Vantage Foods' operation of the Lenoir Plant; and
- Documents tracking, analyzing or assessing the accuracy of Alex Lee's forecasting of meat products to be shipped by Vantage Foods from the Lenoir Plant to Alex Lee and its related entities.

(*Id.*, at 3-4.)

Concurrently with the filing of its response (Doc. 10) to Vantage's "Motion to Quash Subpoenas," Swift filed its "Motion to Compel Compliance with Subpoena Directed to Non-Party." (Doc. 8.) The arguments raised by Swift in support of its motion to compel mirror those raised in its response to Vantage's motion. (*Compare* Doc. 8 to Doc. 10.)

## ANALYSIS

**A.     Legal Standards.**

Fed.R.Civ.P. 26(b) states that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

As such, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable.

Discovery relevance is broadly construed. *AKH Co., Inc. v. Universal Underwriters Ins. Co.*, 13-2003-JAR-KGG, 2015 WL 4523578, at *2 (D. Kan. July 27, 2015). As such, "discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action." *Id*. "Federal Rule of Civil Procedure 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

Fed.R.Civ.P. 45 governs subpoenas, with section (d) of that Rule relating to "protecting a person subject to a subpoena" as well as "enforcement." Subsection (d)(1) of the Rule states that

> [a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply.

Subsection (d)(2)(B) relates to objections to subpoenas and states that

> [a] person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises – or to producing

> electronically stored information in the form or forms
> requested. The objection must be served before the
> earlier of the time specified for compliance or 14 days
> after the subpoena is served. If an objection is made, the
> following rules apply:
>
>> (i) At any time, on notice to the commanded
>> person, the serving party may move the court for
>> the district where compliance is required for an
>> order compelling production or inspection.
>>
>> (ii) These acts may be required only as directed in
>> the order, and the order must protect a person who
>> is neither a party nor a party's officer from
>> significant expense resulting from compliance.

Subsection (d)(3)(A) requires the District Court to quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (ii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden. Thus, the Court must balance Plaintiffs' needs for the information with the potential for undue burden or expense imposed on the third-party respondent.

**B.     Relevance.**

Vantage contends that when it conferred with Swift regarding the relevance of the categories of information listed in the subpoena, "Swift's only explanation is that the document requests are relevant to whether Alex Lee was entitled to terminate a lease agreement it had with Swift." (Doc. 2, at 10; citing Doc. 2-2, at

18 [cited as Doc. 2-D, at 2].)  Vantage compiles Swifts requests into four categories:

> 1) Requests 1, 4, 5, 6, 8, 9, 10, 12, and 23 all seek documents concerning Vantage Foods' contracts and agreements with Alex Lee and its subsidiaries.
>
> 2) Requests 2, 3, 7, 11, 20, and 13 seek documents and communications shared between Vantage Foods and Alex Lee and its subsidiaries.
>
> 3) Requests 14, 15, 16, 21, 22, 24, and 25 seek highly confidential details about Vantage Foods' operations at the Lenoir Plant, including production volumes, labor costs, blueprints, and internal analyses.
>
> 4) Requests 17, 18, and 19 seek documents concerning complaints Vantage Foods may have received from Alex Lee and its subsidiaries.

(Doc. 2, at 10.)

As Vantage points out, Swift's claims against Alex Lee sound in contract as do two of Alex Lee's counterclaims.  Vantage argues that its contracts with Alex Lee "are separate and completely unrelated to the disputes between Swift and Alex Lee, [thus] they cannot be used to support or defend any of the contract claims in this case." (*Id*., at 11.)  The remaining counterclaims relate to "fraud, conversion, and deceptive practices" Alex Lee alleges against Swift.  As Vantage states, "[n]otably missing is any mention of Vantage Foods." (*Id*., at 12.)  As such, Vantage argues that its "business records simply cannot shed any light" on legal disputes concerning the conduct of Swift and Alex Lee.  (*Id*.)

7

Swift responds that the categories of requested information "are targeted to seek information relevant to Alex Lee's counterclaims and arguments raised in the North Carolina Lawsuit." (Doc. 10, at 5.)

> For instance, two document requests . . . seek copies of the agreements between Vantage Foods and Alex Lee relating to the Lenoir Plant and Vantage Foods' preparation and shipment of products from that facility to Alex Lee. This information is relevant not only for context relating to the relationship between Vantage Foods and Alex Lee, but for assessing Swift Beef's performance in comparison to Vantage Foods' performance at the Lenoir Plant and whether the same parameters apply for comparing their respective performance.

(*Id*.) Vantage replies that "[l]ogically, comparison of the requested Vantage Foods data from a completely different time period would not offer any evidence of whether Swift's conduct was reasonable or whether its costs were 'competitive' *during* its performance under the Purchase Agreement with Alex Lee." (Doc. 13, at 6.)

The Court agrees with Vantage that the relevance to the issues in the underlying lawsuit of this comparison between performances of different entities (one of which is not a party to this law suit) during different time periods is suspect.[1] This is particularly true given Vantage's assertion that Swift produced a

---

[1] This is also true regarding requests for information relating to topics such as Vantage's forecasting of shipments, labor costs, operations, and productivity.

"different product mix for Alex Lee . . . ." (*Id.* (internal citation omitted).) Given the burden imposed on Vantage and proportionality of the information requested to the needs of the case, discussed *infra*, the Court finds that Swift has not established the relevance of the information requested.

**C.     Undue Burden & Proportionality.**

Fed.R.Civ.P. 45(d) states that a court must quash a subpoena that "subjects a person to undue burden." "Courts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure." *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter*, 211 F.R.D. 658, 662-663 (D. Kan. 2003). "Whether a subpoena imposes an undue burden upon a witness is a case-specific inquiry that 'turns on such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *Speed Trac Techs., Inc. v. Estes Express Lines, Inc.*, Case No. 08-212-KHV, 2008 WL 2309011, at *2, (D. Kan. June 3, 2008) (*quoting Heartland Surg. Specialty Hosp., LLC v. Midwest Div., Inc.*, Case No. 05-2164-MLB-DWB, 2007 WL 2122437, at *4 (D. Kan. July 20, 2007).

Vantage argues that the modified subpoena is unduly burdensome on its face. (Doc. 2, at 15.) Upon analysis of the factors to be considered, the Court finds the subpoena to be unduly burdensome.

As discussed above, the relevance of the information requested is dubious. Additionally, the burden on Vantage to comply with the production is significant. Swift argues that Vantage has provided no evidence that responding to the subpoena would be unduly burdensome. (Doc. 10, at 16-20.) The Court disagrees.

Vantage is a defunct entity and would have to rely on high-level employees of its affiliated entities to compile the information. (Doc. 2, at 15.) Vantage contends that "the effort to respond would be extremely time-consuming" because the documents are kept in storage in Pennsylvania and "are not cataloged or organized in a way that would make them easily identifiable." (*Id*.) Searching for ESI would be equally daunting as such information was not universally maintained when Vantage ceased operations. (*Id*., at 15-16.) All things considered, Vantage

> estimates it would take hundreds of hours to complete a comprehensive search for documents responsive to its requests. Any personnel available to assist with this project work for Vantage Foods' affiliated entities. Complying with the Subpoenas would take them away from their normal job duties and could negatively affect the operations of Vantage Foods' affiliated entities.

(*Id*., at 16 (internal citations omitted).) As such, the Court finds that compliance with the subpoena to be unduly burdensome on its face. This is particularly true

when Swift concedes that certain of the categories of discovery sought are "duplicative since they seek the same information separately from Alex Lee and its two primary food distribution and retail operating companies . . . ." (Doc. 9, at 10; Doc. 10, at 5.)

Concurrently, the information requested by the subpoena is not proportionate to the needs of the case, pursuant to Fed.R.Civ.P. 26(b)(1). The Rule mandates that the Court consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*.

As discussed above, the subpoena is unduly burdensome on its face. Vantage's "relative access" to the information is tenuous. As a defunct entity, Vantage has limited resources, particularly in light of the burdensomeness of complying with the subpoena. The limited relevance of the information means it has limited "importance . . . in resolving the issues" present in this lawsuit. Further, Vantage contends that "to the extent any of the documents requested in the Subpoenas are relevant to this case, they were likely stored on Alex Lee's systems and Alex Lee should have access to them." (Doc. 2, at 17.)

Swift responds that it "is not in a position to know if Alex Lee has the same

information as Vantage Foods, nor whether a particular document in Vantage Foods' possession may differ in version or have additions or omissions when coming from two different sources." (Doc. 10, at 22.) The Court is not persuaded that the assumed benefit of potentially obtaining what may or may not constitute "different versions" of the same document outweighs the significant burden imposed on Vantage. Further, just as Swift is "not in a position to know if Alex Lee has the same information as Vantage Foods," there is no evidence that these entities – one of which is defunct – possess "differing" information. The Court will not compel compliance with a subpoena that appears to constitute a fishing expedition.

All things considered, the information requested by the subpoena has limited relevance and is not proportional to the needs of the case. Further, Vantage has established that its production would be unduly burdensome. As such, the "Motion to Quash Subpoenas" (Doc. 1) filed by non-party Vantage Foods is **GRANTED**.

Concurrently, the "Motion to Compel Compliance with Subpoena" filed by Plaintiff Swift Beef Company (Doc. 8) implicates the same issues as the motion filed by Vantage – relevance, the scope of discovery, proportionality, etc. (*See* Doc. 9, at 16-22.) Because the subpoena has been quashed, Swift's motion (Doc. 8) is **DENIED as moot**.

IT IS SO ORDERED.

IT IS THEREFORE ORDERED that the "Motion to Quash Subpoenas" filed by non-party Vantage Foods (Doc. 1) is **GRANTED**.

IT IS FURTHER ORDERED that the "Motion to Compel Compliance with Subpoena" filed by Plaintiff Swift Beef Company (Doc. 8) is **DENIED as moot**.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas, on this 31st day of October, 2018.

s/ KENNETH G. GALE<br>
KENNETH G. GALE<br>
United States Magistrate Judge